Good morning, ladies and gentlemen. We're joined today on the panel by our colleague, Judge Joan Azarack of the Eastern District of New York. I'm told that counsel is here in all the cases scheduled for argument, so let's get started. Wenc v. New London Public Schools. May it please the court, my name is Jacques Parenteau. I'm here today with John Wenc, who's the plaintiff in the case. I'd like to start off with a statement about the public policy that Congress declared when they enacted the Americans with Disabilities Law, which was that the Americans with Disabilities Act seeks to assure equal opportunity, full participation, and economic self-sufficiency for disabled employees. And that is principally what was denied to John Wenc in the decision of the district court when the court decided that it was plainly reasonable, the accommodation of a leave of absence was plainly reasonable, but it left John Wenc without any income from May 9th of 2012 until November of 2012. And similarly, when the accommodation less than adequate was provided when he went back to work in November of 2012, three months later, reoccurrence of the lesion occurred, and he was again from February 21st, 2013, until the end of that school year without an income because he had exhausted all of the benefits under the collective bargaining agreement that provided him with sick days. After requesting a- Am I right that his doctor in March of 2012 recommended that he extend his medical leave? In March of 2012, the doctor commented on the size of his lesion and said that the physical movements associated with first grade teaching prevented him from returning to the classroom. But the interesting thing about the leave- The answer is yes. She didn't specifically say that she extended the leave for any particular period of time. She didn't qualify him as able to go back to work. We have to decide as one level if there's a question of fact about his ability at that time to perform his employment, and what we're asking is whether we're right in understanding that at that time, at the time of that doctor's report, the doctor was saying that he basically was not ready to return to work. If I would be permitted to put that note in context, because on December 13th, John Wentz requested a transfer to an open position in the sixth grade. The superintendent denied that request without informing John that he had done so, without any discussion, 10 days later. That was before the district even knew that John requested the initial two-week leave. He was then on a series of two-week leaves until February of 2012, when the district changed the playing field entirely by offering him a paid leave until the end of the semester. John signed the agreement- We're making ourselves clear. There was a period when he was unable to work, and we're trying to find out when the first doctor's report indicated that he was able to go back to work. The doctor's report indicating he was able to go back to work did not occur until in the context of the functional capacity examination, which was delayed until July, but- Of 2013. But Dr. Bentz testified in her deposition that had John been permitted to transfer to a higher grade, which was his request back in December, he could have returned to work in the higher grade in April of 2012. But she didn't indicate that at the time. Well, she didn't indicate it at the time, and the reason she didn't indicate it at the time is because the district failed in its obligation to engage in the interactive, good-faith discussion that is accompanying the obligation to provide the reasonable accommodation. What John Wentz was told- Well, he wasn't told anything because the superintendent- John asked four times- December, February, April, June of 2012- to be able to discuss the transfer to a grade which Dr. Bentz has testified would have allowed him to return to the position of full-time employment with reasonable accommodations accompanying assignment to that grade. So the district- Counsel, doesn't the record only reflect that Dr. Bentz would have considered clearing him? She would have considered, but that's the whole point of engaging the employer and the employee in an interactive, good-faith, problem-solving discussion in order to find out how to get John back to work. That was not the environment that John faced with the New London public school system. The environment that he faced was entirely hostile to his status as a disabled employee, starting with the superintendent's refusal to even consider a transfer to the upper grade ten days after he made that request without telling John that was the case. Secondly, conditioning the extension of his paid leave on his resignation of his employment at the end of that term. The comment that was made in the meeting that was finally held on July 5, 2012, that I attended, that if a meeting to discuss reasonable accommodation- the first words out of the superintendent's mouth were, if you can't work, why don't you apply for Social Security Disability? That shows an intention not to accommodate John. Then, after agreeing at our request to have an expert opinion about whether the functions of a sixth-grade teacher and one in the first grade who has to bend down with a prosthetic device, as he has, would make more difficult the twisting, the bending, the crouching- not going to be a problem in the sixth grade. And then, when saying he would abide by the recommendation of the expert, he refused to provide the accommodation that the expert recommended, which was two aids. And there's no question the district court was in error in not allowing the jury to determine that two aids were recommended by Dr. Kamal. Two aids were not provided. Their HR administrator, and even the superintendent himself, realized that two aids were required. The problem for you, as the district court observed, is that there's some ambiguity as to whether the two aids were two separate aids from the one that was already in the classroom for the disabled child. But more to the point, your client's deposition acknowledged that the aids that were provided were satisfactory. Yes. So, to that extent, and when we put on top of that that the law does not require the employer to provide the requested disability, or the best accommodation, rather, for the disability. It requires a reasonable accommodation. Where your client is saying it was satisfactory, how is a reasonable jury going to conclude that the employer failed to meet its obligation? Well, first of all, if you look at that statement in context, the aids themselves were satisfactory. What John Wentz testified in that deposition, this is at SA-106, I surrendered to it. I decided I was going to do the best I can. So it was not satisfactory. And even the district superintendent and the HR person both admitted that they knew two aids in addition to the aid that was assigned to the student was what was required by Dr. Kamal. He was not provided that accommodation. The purpose of providing an aid was to provide someone who could do physically what Mr. Wentz was not able to do physically. In other words, it was to provide the physical ability of one disabled person. Why wouldn't one aid satisfy that? Because in his classroom environment, although this issue was never fully explored at the district court, if you have one aid in the classroom and one of the children requires a bathroom visit, that aid is not in the classroom any longer. If the child hadn't had a disability, wouldn't that have been the same situation? Perhaps so. To that extent, I'm just suggesting how one aid to meet the physical needs occasioned by your client's physical disability is not a reasonable accommodation. Because it would not allow him to do the essential function of teaching, to zip up the child's coat or to deal with a backpack issue or tie his shoes. There was constant occasions when he would have to further injure his stump by using a prosthetic device in a way that was harmful to him. I thought your answer might be that, and maybe I'm mistaken about this, that the defendants here have more or less agreed that there was a two aid requirement. They did agree that there was a two aid requirement from Dr. Kamal. He's the person, after reviewing John Wentz's job responsibilities, they were provided by the lawyer for the New London School District, decided that two aids were required. And you'll see in his notes that John didn't even think two aids was enough. What was the appropriate accommodation was a transfer to a higher grade. And ultimately, that's what happened in June of 2013. And if you look at the reasoning of the HR person who finally decided to do that, they said, if we had to put three aids in a classroom, we thought that that was unreasonable. So it was easier to transfer him to the fifth grade. And when he was transferred to the fifth grade, he was transferred with one aid. Let me ask you one additional question. Right now, is the situation one where he has received all the reasonable accommodations that he thinks are due him? Yes. And I am happy to report, although the case ended in 2013 on the record, that as of this year, John Wentz successfully completed his year at a magnet school, teaching math to sixth graders. And next year, he's going to be a .06 teacher for drama and a .04 teacher for mathematics because finally, after all these years, and if he didn't have the ADA, he would have been fired in 2012. Finally, after all these years, he has a supportive school system that is assisting him. I know you want to reserve time. Let's hear from your adversaries. Thank you. Good morning, Your Honors. May it please the Court. My name is Joanna Zellman. I'm here today with my colleague, Cindy Cieslak. We represent the New London Board of Education. I think one issue that becomes clear is that the plaintiff is relying heavily on this public policy, and I'm not sure that he has stated what the public policy is correctly. Our Congress has decided that there's a balance between the interest of the employee to work and the interest of the employer in operating a business, and that's why Congress has given and the courts have given the ultimate right of deciding the best accommodation that is reasonable for the district on the employer, not the employee. And I believe it's well settled in our case law that as long as the employee is provided a reasonable accommodation, that the inquiry stops there. In this case— Can a reasonable accommodation—I hear you. But can a reasonable accommodation be an unpaid leave of absence for a significant period of time? First of all, absolutely. Second of all, I want to clarify the dates on which there was this unpaid leave. He was paid through May 9th of 2012. Through the end of the school year, which was about six weeks, that was the unpaid leave period. Say that again? Sure. The end of the school year would have been about mid-June, so it was a four- to six-week time period. And then he was again resumed pay at the beginning of the following school year because the board forwards the time for paid leave. So he received another significant paid leave. I think it was about 15 days at the beginning of the 12-13 school year. And then he went unpaid again from September through November 15th. I understand your position. You're not suggesting it could be a reasonable accommodation if he could have worked with accommodations, right? It's only if he was unable to work. The accommodation is you can go on paid leave. We won't fire you while you heal. Correct. So now we get to the point of whether during those periods when you suggested and he took unpaid leave, he could have worked with reasonable accommodations. I don't believe that there's any dispute in the record that he could have. And I think we need to look at this from the perspective of what the defendant knew, not what a doctor may have testified during the testimony, looking backwards, right? I mean, I'll read to you what the March 1st, 2012 letter says. It says- Where is that again? It is at Plaintiff's Volume 1 Appendix, page 332. And it says specifically, I saw John Wentz in my office 2-9-12 as well as 3-1-12. He has ongoing problems with a non-healing ulcer on the left amputation stump, which is likely due to overuse of his prosthetic leg. He is in need of refit and or a new prosthetic. He is having ongoing meetings with his prosthetist for correction of his prosthetic fit. I advise him to continue to offload pressure as much as possible. I think it is in John's best interest to be out of work as he has to do much bending and moving as a kindergarten teacher and to focus on offloading pressure on the leg. I will be seeing him for ongoing follow-ups. There is not a mention in this that any accommodation would allow him to return to work. This is his physician saying he can't work. And if you look back at his medical notes, they all say the lesion is worsening, the lesion is worsening. And then we get to this vacant position that he claims he could have done, but it was filled two days later. So it's impossible for a jury to conclude that based on what the defendant knew, that any other accommodation was reasonable. You know, the district court does go into this later letter in April, which talks a little bit more, you know, he would be better suited for a position in an upper grade level. But still there is no connection made between transferring him to an upper grade level and him returning to work. So there would have been no way for the defendant to know in this situation that he could have returned to work. And the fact of the matter is I think he concedes he couldn't work as a first grade teacher. By April of 2012, there was no position available as a sixth grade teacher for him or any other place. So I don't think on the record evidence that's before this court, and given what the case law says about an accommodation being clearly reasonable under the circumstances, that any jury could conclude that he was not provided a reasonable accommodation. And I would like to stress also that I think- I understand this concern about an indefinite period of unpaid leave. In answer to my question, you said absolutely. Have we ever said that, first of all? I mean, when you say absolutely, what's your source? So let me understand your question. You're saying is an indefinite unpaid leave a reasonable accommodation? Right. Well, first of all, an indefinite leave would never be a reasonable accommodation, whether it's paid or unpaid. I think the case law is clear on that. Would an indefinite unpaid leave be an accommodation? Sure. I mean, if the plaintiff can't return to work and we're providing him with accommodation of leave, then we haven't terminated him. We're still allowing him the time to recuperate and come back to work. So it's the fact of termination that you think is the key factor. Yes. And I think there's plenty of case law- It's only a reasonable accommodation if he is unable to work with other accommodations. I don't know that I would necessarily agree. I need a swivel chair, a special kind of chair to work. And you said to them, you know what, take unpaid medical leave. That's the accommodation we're giving you. That could not be a reasonable accommodation in that circumstance. Yeah, I would agree in that circumstance, but I don't think we also can, like, compare what we have here to your example. You know, you're dealing with a group of elementary-aged children. You have to also take into consideration what the business needs of the employer is. And, you know, this wasn't a simple fix, giving a swivel chair or, you know, giving them, you know, an extra pointer. You're talking about, you know, transferring a person into a position that is new to them. And it involves disruption to students. It involves disruption to other teachers who may be in those positions. And the law does not require the employer to create a position. So I think what's missing here is that if he believes that his appropriate accommodation was a transfer, well, he needed to come, there needed to be a position available to him. And there wasn't. Well, one response was that there was. Second response is that an interactive process might have clarified the need for the two aids. But that wasn't undertaken. So you're talking about now November, in November of 2000. The two aids didn't come up until the functional capacity examination in November of 2012. There was an interactive process that took place there. Everybody sat down. No one during that meeting ever said that it was two additional aids. That only came up in the course of litigation. And, again, I don't know how you get around the fact that Mr. Wen said I was satisfied with the accommodation I was given. Now, the case law is clear that, you know, it doesn't have to be the ideal reasonable accommodation. And it doesn't have to alleviate, an accommodation doesn't have to alleviate every problem that an employee may have who is disabled. It just needs to be reasonable. And, again, under these circumstances, the record evidence is pretty clear that at no time before July or June 30th of 2012 could he have returned to work. That's clear. And the case law is also clear that there is no obligation to engage in an interactive process where the duties are not imminent. So here, you know, once June of 2012 came, he says, okay, I can return to work. They sit down. They engage in the interactive process. They agree to do a functional capacity. When did you say that started? June of 2012, which would have been the end of the school year. The interactive process starts in June 2012? Well, no, I think it was ongoing. It was ongoing. It started in November 2012. No. It started before that. So he asks for a leave in December of 2011. We provide that leave. January, we say we need ongoing information. We need more information from you. But we need you to keep us updated. So he provides us with notes after note every two weeks saying, I still need to leave. I still need to leave. I still need to leave. In June, he says, we still don't have a release, but at the beginning of next year, I can come back. So we all sit down at that point. We agree to a functional capacity exam. That's August. We sat down in July. The functional capacity exam was not done until October, and that was because the plaintiff wanted to use a specific doctor. We agreed, and the doctor didn't do it until October. And then the doctor that he chose didn't give us a recommendation until November 1st, and he was back at work within two weeks. Thank you very much. We appreciate your argument. Yes. I would want to mention that it's important to note that John taught in the sixth grade, 2006, 7, 7, 8, something like that. And when he was transferred to the first grade, he asked at that point in time not to be transferred because of the harm he anticipated would happen to his stump. So he was able to undertake that accommodation immediately in January of 2012. The problem is that the interactive good faith discussion did not start at that point in time. Had it started at that point in time, then if we knew there was a refusal, then other options could have been considered starting in January, and we wouldn't have had to wait until the summer, July, seven months later to have that discussion, and then the unfortunate delays that occurred with trying to figure it out. But what the district court did, by finding that an unpaid leave of absence was plainly reasonable, is he foreclosed. No. There was no obligation then to consider what the accommodation was that John requested at that point in time. So we never had the opportunity to litigate whether it. I think that there's at least a good basis to say that it's plainly reasonable given Dr. Benz's letter in March. Dr. Benz's April letter, which you'll be able to read in the record, it's 334, lays out pretty clearly that John cannot return to work because of the work position that he's in. So that combines with her deposition testimony that says, had there been a transfer to an upper grade, I could have considered. I think it continues to be in John's best interest to be out of work. Because he cannot be transferred to an upper grade. If you look at the medical notes, which admittedly they did not have, starting in January, Dr. Benz was talking about. There was no opportunity to have that discussion because. When you're asking us to conclude that a document doesn't mean what it says on its face because it could have been qualified. But the doctor did not qualify it. So you're saying when a doctor says the person can't work, the employer is required by the ADA to then have a discussion about, well, are there accommodations we could give that would allow them to work? And I'm not sure you've got precedent for that where the doctor has made a statement that it's in their best interest not to work. This medical note cannot be looked at without reference to the circumstances. And the circumstances were that John Wentz had, on three occasions by then, come to the New London board and said, I cannot work in this grade because I'm getting a lesion. I'm at the end of my stump having to engage in all this physical activity. They asked in January for evidence that would support his claim. That note, April 16th, supports the claim in response to the January 20th or 27th letter from the district. But then the district went off on a whole different course of action, offering this paid leave, and then they demanded his resignation. Then we're back on track with, you need to provide us with medical notes to support your disability. What she had that, the district had that note on April 30th. On May 3rd, they wrote to him and said, you need to apply for FMLA, which is the beginning of his unpaid leave. They didn't say, why don't you come in, John? Let's talk about the physical disability that you have that prevents you from working in first grade. What I'm saying is that they had an obligation to engage in that discussion, and we probably would have got there eventually. Thank you, Your Honor.